UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, )<br><br>Plaintiff, )<br>v. )<br><br>REAL PROPERTY LOCATED AT )<br>7401-03 S. RACINE AVENUE, )<br>CHICAGO, ILLINOIS; and )<br><br>REAL PROPERTY LOCATED AT )<br>8046 SOUTH KIRKLAND AVENUE, )<br>CHICAGO, ILLINOIS, )<br><br>Defendants. ) | Case No. 04 CV 5885<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Before the Court is Claimant Mahmoud Abufarha's ("Abufarha") Amended

Motion for Partial Collateral Estoppel. (Docket No. 46.) For the reasons stated below,

the motion is denied.

### ANALYSIS

This is a civil action for forfeiture brought by the Government against two parcels

of real property owned by Abufarha – Real Property Located at 7401-03 S. Racine

Avenue, Chicago, Illinois; and Real Property Located at 8046 South Kirkland Avenue,

Chicago, Illinois. The Government's Verified Complaint for forfeiture alleges that these

parcels of real property are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A)

and (C) because Abufarha, through his small retail grocery store (74 Discount, Inc.)

located at 7401-03 S. Racine Avenue, engaged in a scheme to defraud the United States

1

Department of Agriculture, Food and Nutrition Services, by illegally exchanging cash for Electronic Benefit Transfers (or link card benefits), commonly known as food stamps. The Verified Complaint alleges that Abufarha used the proceeds of his fraudulent link card redemption activities to pay monthly mortgage payments on 74 Discount and to pay off the $106,566.19 mortgage on his personal residence located at 8046 South Kirkland Avenue.

A prior criminal proceeding was brought against Abufarha for his illegal activities. Abufarha was indicted by a federal grand jury in December 2002 in *United States v. Mahmoud Abufarha*, Case No. 02 CR 957. The superseding indictment alleged that Abufarha's scheme commenced in October 2001 and continued until October 2, 2002. The indictment alleged four counts of wire fraud (Counts 1-4); 16 counts of food stamp fraud (Counts 5-20) and one count of money laundering (Count 21). The criminal case proceeded to trial before Judge Holderman. During trial, Abufarha pled guilty without a plea agreement as to Counts 1-9 and 17-20. The Court later directed verdict on Counts 10-12 and 21, and the Government dismissed Counts 13-16 and its two forfeiture allegations. A judgment of acquittal was entered on those counts.

At sentencing, the Government and Probation Department determined that the loss for the period for which Abufarha admitted guilt, September 8, 2002 through October 2, 2002, totaled $125,454. However, Judge Holderman found that the Government failed to prove this amount at sentencing. Because the Government failed to prove an amount of loss greater than $16,875 by a preponderance of the evidence, the

2

court found the loss amount for the period of Septmber 8, 2002 through October 2, 2002, to be the amount Abufarha admitted, $16,875. Restitution in that amount was imposed in the judgment in the criminal case. That amount of restitution has been paid.

Abufarha now moves this Court for an order that the Government be "collaterally estopped" from seeking forfeiture in this civil forfeiture case "based upon food stamp fraud during the period of September and the first two days of October, 2002." He states that he does not seek "to apply collateral estoppel to bar the government from seeking forfeiture outside of the September-October, 2002 period." Abufarha's argument appears to be that Judge Holderman's determination of the amount of loss suffered by the Government for food stamp fraud for the period for which Abufarha admitted guilt in the criminal proceeding (September 8, 2002 through October 2, 2002) precludes the Government "from seeking forfeiture based on food stamp fraud proceeds" for that time period here.

Generally, collateral estoppel precludes relitigation of issues in a subsequent proceeding when four prerequisites are met: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical. *Appley v. West*, 832 F.2d 1021, 1025 (7th Cir. 1987). The Seventh Circuit has acknowledged that collateral estoppel may be applied in civil trials to

issues previously determined in a criminal conviction. *Id.* at 1025-26. However, the Seventh Circuit has not addressed the related question of whether findings made in a criminal *sentencing* proceeding may preclude relitigation of an issue in a subsequent civil case.

The parties cite cases from other circuits that have addressed this question. *See Maciel v. Commissioner of Internal Revenue*, 489 F.3d 1018 (9th Cir. 2007) (*Maciel*); *United States v. U.S. Currency in the Amount of $119,984.00*, 304 F.3d 165 (2d Cir. 2002) (*U.S. Currency*); *Securities Exchange Commission v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999) (*Monarch*). These cases all either explicitly or implicitly recognize that findings of a sentencing court could have collateral estoppel effect in subsequent civil litigation. However, all of the cases held that precluding litigation on the basis of findings at a sentencing proceeding is "presumptively improper." *See U.S. Currency*, 304 F.3d at 173; *Maciel*, 489 F.3d at 1023 ("Following the Second Circuit, we now hold that it is presumptively improper for a court to give preclusive effect to the findings of a sentencing court during subsequent civil litigation.") Further, all of the cases *declined* to apply collateral estoppel. (Indeed, Abufarha cites no case applying collateral estoppel in this context.)

In reaching their decision, the Second and Ninth Circuits reasoned that giving collateral estoppel effect to findings made in criminal sentencing proceedings "implicates serious concerns of fairness, while appearing to offer little benefit in terms of increased efficiency." *U.S. Currency*, 304 F.3d at 172. In particular, criminal sentencing proceedings do not afford the "full and fair opportunity" to litigate issues that is available

4

in civil proceedings. First, civil proceedings offer procedural and discovery opportunities that differ from those available at sentencing. *Monarch*, 192 F.3d at 305. Second, "the incentive to litigate a sentencing finding is frequently less intense, and certainly more fraught with risk, than it would be for a full-blown civil trial." *Id.*

The Government here acknowledges that it had an incentive to litigate the issue of the loss caused by Abufarha's conduct at sentencing and contested the loss amount. However, the Government argues it did not have a "full and fair opportunity" to develop the evidence in the sentencing proceedings because it did not have the ability to engage in civil discovery and to present certain probative evidence at the sentencing hearing available in this civil case, namely, the sworn testimony of Abufarha and his wife. In addition, the Government asserts that as a result of civil discovery conducted in this forfeiture case, relevant documents not available at the criminal sentencing are now available and have been produced to it.

Abufarha disputes the Government's position that it did not have a full and fair opportunity to litigate the loss issue at sentencing. He contends the Government was given a full and fair opportunity "to present its case for the period of September 8, through October 2, 2002" at the sentencing hearing, and the sentencing was vigorously contested. Further, Abufarha asserts that the discovery that occurred in this case has not actually "put the government in an appreciably better position than it was in the criminal case." Abufarha asserts that "the government had most or all of the invoices and receipts for September 8 through October 2, 2002, period at the time of the criminal trial" but simply chose not to utilize all of those invoices and receipts in the sentencing hearing."

However, whatever the Government's strategy in the criminal proceeding, the Government's stated concerns here are precisely why the Second and Ninth Circuits declined to give preclusive effect to findings made at sentencing in a subsequent civil proceeding. Following the decisions of the Second and Ninth Circuits, the Court declines to apply collateral estoppel here.[1]

## CONCLUSION

For the reasons stated above, Abufarha's Amended Motion for Partial Collateral Estoppel is denied.

Date: March 25, 2009

JOHN W. DARRAH
United States District Court Judge

---

[1]Further, Abufarha has not made clear how the issue of loss presented in this action seeking civil forfeiture of two parcels of property is "identical" to the determination of the amount of loss Judge Holderman determined for the purposes of sentencing. It is not clear what specific issue Abufarha contends has been conclusively determined when he states that he seeks "to preclude the government from seeking forfeiture based on food stamp proceeds received by claimant . . . for the period from September 8 through October 2, 2002."