

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Case No. 04 C 5885<br>REAL PROPERTY AT 7401-7403 )<br>SOUTH RACINE AVENUE, ) Judge John W. Darrah<br>CHICAGO, ILLINOIS; and REAL )<br>PROPERTY AT 8046 SOUTH )<br>KIRKLAND AVENUE, CHICAGO, )<br>ILLINOIS, )<br>)<br>Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America brought this action for foreclosure against two pieces of real property owned by the Claimant, Mahmoud Abufarha. One property was a grocery store located at 7401-7403 South Racine Avenue, Chicago, Illinois (the "Racine property"). The other is a residence located at 8046 South Kirkland Avenue, Chicago, Illinois (the "Kirkland property"). The United States sought forfeiture of both properties due to Claimant's engaging in wire fraud and food-stamp fraud.

A bench trial was held on March 1 and March 3, 2010, during which several witnesses testified and various exhibits were admitted into evidence. Closing arguments were presented by the United States and Claimant. The parties also submitted stipulated facts, proposed findings of fact and conclusions of law, and post-trial briefs.

On March 30, 2010, the Court entered judgment in favor of the Government, ordering the complete forfeiture of the Racine property and a judgment of forfeiture in

the amount of $106,056 against the Kirkland property. The Court's Findings of Fact and Conclusions of Law are set forth at *United States v. Real Property Located at 7401-03 S. Racine Ave. et al.*, No. 04 C 5885, 2010 WL 1286885 (N.D. Ill. Mar. 30, 2010) (*Racine I*).

Presently before the Court is Claimant's Motion to Amend Judgment or for New Trial, which Claimant brings pursuant to Federal Rules of Civil Procedure 52(b) and 59. For the reasons discussed below, Claimant's Motion is denied.

## LEGAL STANDARD

Within 28 days of a judgment's being entered in a bench trial, a party may bring a motion asking the court to amend its findings or make additional findings. Fed. R. Civ. P. 52(b). Within that same period of time, a party also may move for a new trial or bring a motion to alter or amend a judgment. Fed. R. Civ. P. 59(b), (e).

Claimant (the moving party) does not set forth any legal standards in his three-page Motion. The Government argues that Claimant's Motion should only be treated as a Rule 59(e) motion because each of Claimant's arguments questions the validity and correctness of the Court's findings of fact and conclusions of law. In *St. Mary's Medical Hospital Center v. Heckler* cited by the Government in its brief opposing the instant Motion – the Seventh Circuit determined that a motion brought pursuant to Rule 52(b) may properly be construed as a motion under Rule 59(e) if the moving party brings the motion to challenge the validity of the district court's judgment:

> Since the motion made does request that the judgment be altered or amended, it falls within the intent of Fed.R.Civ.P. 59(e). The critical factor in classifying a motion under Rule 59 is whether the motion questioned the substantive validity of the judgment and not merely its form. The

2

> [moving party] fashioned her motion as falling within Fed.R.Civ.P. 52(b) rather than Rule 59(e), but that fact is not dispositive. Any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label.

753 F.2d 1362 (7th Cir. 1985) (citations and internal quotation marks omitted).

At any rate, neither party has identified any substantive distinction regarding the standards under Rule 52(b) and 59(e). A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986). It is within the district court's discretion to grant a Rule 59(e) motion. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir.1995). Proper grounds for granting a new trial are essentially the same. *See Index Futures Group, Inc. v. Schmidt*, No. 92 C 4353, 1997 WL 187321, at *1 (N.D. Ill. Apr. 11, 1997) ("There are three grounds for granting a new trial in non-jury cases: (1) manifest errors of law; (2) manifest errors of fact; and (3) newly discovered evidence.") (citation omitted).

District courts have required a similar showing on a motion to amend a district court's findings of fact or conclusions of law under Rule 52(b). *See, e.g., Sunrise Opportunities, Inc. v. Regier*, 2006 WL 581150, at *4 (N.D. Ill. Mar.7, 2006); *Diebitz v. Arreola*, 834 F.Supp. 298 (E.D.Wis.1993) (recognizing manifest error of fact or law by trial court, newly discovered evidence, or change in the law as possible grounds for a motion to amend under Rule 52(b)).

Accordingly, unless Claimant presents newly discovered evidence or establishes that judgment was based on a manifest error of law or fact, his Motion must be denied.

## ANALYSIS

Claimant does not challenge the judgment of forfeiture against the Racine property.[1] Instead, Claimant argues that the $106,056 judgment against the Kirkland property should be amended on three grounds: (1) the fraud amounts attributable to Claimant's food-stamp fraud should have been based only on *net* proceeds of Claimant's fraudulent scheme; (2) the Court made an erroneous finding that only 10 percent of Claimant's purchases from Dearborn Wholesale were for eligible food items; and (3) the Government did not meet its burden of tracing the money used to pay off the mortgage on the Kirkland residence as proceeds of Claimant's food-stamp fraud.

First, Plaintiff asserts that the meaning of "proceeds" in the forfeiture statute should be interpreted to mean *net* proceeds (i.e., the *profits* of Claimant's unlawful activities) rather than the total amount of fraudulent redemptions attributable to Claimant's scheme. Claimant is simply renewing an argument asserted in his post-trial brief, and the argument must again be rejected. When the Government seeks forfeiture of proceeds from "unlawful activities," the forfeiture statute specifically provides that the term "proceeds . . . is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). Claimant has not identified any authority for its position that § 981's alternative definition of "proceeds" for "cases involving lawful goods or lawful

---

[1] Claimant did, however, file a separate "Supplemental Motion to Amend Judgment or for New Trial" on April 28, 2010. Claimant contends the judgment against the Racine property should have been entered only against the property located at 7401 S. Racine and not against the vacant lot at 7403 S. Racine, which arguably was not used to facilitate the food-stamp fraud. The Government thus far does not object to Claimant's position regarding the property at 7403 S. Racine, and the parties are meeting and conferring to discuss how to resolve the issue. Accordingly, this Opinion does not address it.

4

services that are sold or provided in an illegal manner" is the applicable statutory definition. *See* 18 U.S.C. § 981(a)(2)(A). Claimant has identified no manifest error of law in the Court's interpreting the term "proceeds" in the manner set forth in the forfeiture statute and by the Second Circuit in *United States v. Uddin*, 551 F.3d 176, 181 (2d Cir. 2009). *See Racine I*, 2010 WL 1286885, at *8 & n.6.

Second, Claimant asserts that the Court's finding that only 10 percent of Claimant's Dearborn Wholesale purchases were for eligible food items is unreasonable and not supported by the evidence. As discussed in *Racine I*, Claimant's accounting expert, William Thullen, rendered an opinion that necessarily relied on Claimant's unsupported assertion that 80 percent of his non-itemized purchases from Dearborn Wholesale were for eligible food items. 2010 WL 1286885, at *6. Mr. Thullen relied on that assumption, even though the few itemized Dearborn Wholesale receipts Claimant did produce showed less than 8 percent of Claimant's purchases were for eligible food items. *Id.* at *7.

Claimant does not dispute that evidence; nor has he identified any newly discovered evidence to show that a higher percentage of eligible food items were actually purchased at Dearborn Wholesale. Instead, Claimant argues that his itemized receipts show a low percentage of eligible food purchases because those purchases were made near the time Claimant opened his store and stocked it with non-perishable items. Claimant further argues that his testimony and photographs taken of the store's stock "do not support the conclusion that 90 percent of purchases during the whole October 2001 –

October 2, 2002 period (and, more particularly, for October 2001 – August 28, 2002) were of non-eligible items." (Pl. Mot. ¶ 3.)

Aside from the fact that Claimant previously unsuccessfully presented these same arguments, the deficiency in Claimant's present theory is that the Court did not rely on these figures in determining the amount of fraudulent redemptions attributable to Claimant. Instead, the Court based its finding on the Government's evidence that proved "the vast majority of all LINK transactions over $100 were indeed fraudulent." *Racine I*, 2010 WL 1286885, at *9. Then, in a footnote, the Court noted that the resulting figure of $174,317 for the period from January 2002 through August 2002 "is not inconsistent with the Government's position that Mr. Thullen's calculations would establish a $260,913 overstatement for the entire period between November 2001 and October 2002 if computed with the reasonable assumption that only 10 percent of Claimant's Dearborn Wholesale purchases were for eligible food items." *Id.* at *9 n.9. Additionally, the Court noted that its calculation was supported by the fact that Claimant's total LINK redemptions exceeded the estimated sales on his application to participate in the food-stamp program by over $200,000. *Id.* Thus, even if Claimant established that the finding was manifestly erroneous -- he has not – the error would be harmless, and harmless errors are not grounds for a new trial or an amended judgment. *See* Fed. R. Civ. P. 61.

Claimant's third argument is similarly brief and unpersuasive. Claimant contends the Court erred in basing the forfeiture on the amount of funds transferred out of Claimant's personal checking account because it failed to consider the preexisting

6

balance in that account. Claimant also points to the fact that he and his wife testified that they used unidentified "funds from overseas" to pay off a portion of their mortgage.

Like the preceding two arguments, this argument has already been made and rejected. Noting that tracing proceeds through commingled accounts is a difficult task, the Court relied on Seventh Circuit precedent in which it was considered unnecessary to specifically trace fraudulent proceeds through a bank account when those proceeds vastly exceeded the sums on deposit at the time of seizure. *Racine I*, 2010 WL 1286885, at *8 (citing *United States v. $448,342.85*, 969 F.2d 474, 477 (7th Cir. 1992); *United States v. Ali*, No. 02 CR 825, 2006 WL 2038597, at *3 (N.D. Ill. July 17, 2006)). Claimant presents no authority to demonstrate any manifest error of law or fact.

## CONCLUSION

Ultimately, Claimant presents nothing new in his Motion to Amend Judgment or for New Trial. Each of his three arguments was considered and rejected when Claimant first raised them prior to the Court's entry of a final judgment in this case. Accordingly, Claimant's Motion is denied.

Date: May 20 2010

JOHN W. DARRAH
United States District Court Judge

7